**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Charles Bradford Odom, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| | ) |
| Det. Kenan Kaizer, Det. Paul Olson, | ) |
| Glen Valley, Asst. St. Attorney Julie | ) |
| Lawyer and Burleigh County Detention | ) |
| Center and Unknown Head Supervisor, | )   Case No. 1:07-cv-019 |
| | ) |
| Defendants. | ) |

Plaintiff Charles Odom initiated the above action on March 20, 2007, by filing a complaint along with an application to proceed *in forma pauperis*. Noting an apparent relationship between the claims contained in Odom's complaint and then pending state-court criminal proceedings, the court deferred its initial review of Odom's complaint, ordered the action be stayed pending disposition of the state-court criminal proceedings, and ordered Odom to file periodic reports updating the court on the status of the criminal prosecutions.

The court now undertakes its initial screening pursuant to 28 U.S.C. § 1915A.

**I.    BACKGROUND**

      **A.    Underlying State Criminal Proceedings**

On January 20, 2004, Bismarck city police were called to the Select Inn by an anonymous caller. They went to a room where they found Odom and two other individuals, together with a small quantity of marijuana, drug paraphernalia, and approximately $4,500 in cash. The details of what happened after that are not entirely clear. It appears that no arrests were made and it was not

1

until April 25, 2005, some sixteen months later, that a complaint was filed, charging Odom with possession of marijuana and drug paraphernalia, and a warrant for his arrest issued. (Doc. Nos. 9 & 35).[1]  The state district court docket number for the charges arising out of the January 2004 events is Case # 08-05-K-812. (Doc. No. 35).

On December 4, 2005, approximately seven months after the warrant for his arrest was issued and almost two years after the events at the Select Inn in January 2004, Bismarck police were called to another motel, this time the Days Inn, by the manager.  It was there that the pAugust 5, 2009olice arrested Odom on the outstanding warrant in Case No. 08-05-K-812.  During a search of Odom's room, police found in the room's safe a digital scale covered with cocaine residue, a bundle of cash, and crack cocaine.[2]  This resulted in new charges being brought against Odom for possession of cocaine with the intent to deliver (his third offense which carried with it a mandatory minimum sentence of twenty years) and possession of drug paraphernalia.  State v. Odom, 2006 ND 209, 722 N.W.2d 370.  Case No. 08-04-K-2477 was assigned to the new charges. (Doc. No. 36).

Thereafter, on September 6, 2006, Odom changed his plea to guilty on the charges in the first case arising out of the activities in January 2004 at the Select Inn.  He was sentenced to 274 days imprisonment with credit for time served of 274 days and was fined $550.  However, after learning that he would not be released from custody because of the charges pending in the second case (Case

---

[1] As part of its screening, the court has considered the state district court docket sheets for Case Nos. 08-05-K-812 and 08-04-K-2477, copies of which have been filed as Doc. Nos. 35 and 36, respectively.  The state district court docket sheets are publically available through the website of the North Dakota Supreme Court.

[2] In an earlier civil rights action filed with this court, Odom sought to sue several of the persons involved in his arrest along with the manager of the Days Inn claiming racial discrimination.  More specifically, Odom claimed that the manager of the Days Inn, in cooperation with local authorities, had engaged in racial profiling that resulted in the manager calling the police, which, in turn, set in motion the chain of events that resulted in his December 2005 arrest.  This action was eventually dismissed by this court with prejudice.  Odom appealed and the Eighth Circuit affirmed the dismissal in Odom v. Brutger Equities, Inc., 302 Fed.Appx. 505, 2008 WL 5205117 (8th Cir. 2008).

# 08-04-K-2477), he immediately moved to withdraw his plea of guilty. (Doc. Nos. 10 & 35). A judgment of conviction was entered on September 13, 2006, which was followed by another motion to withdraw the plea. On April 11, 2007, the state district court finally denied the one or more motions to withdraw the plea of guilty. (Id.) Thereafter, no direct appeal was taken by Odom from either his judgment of conviction or the order denying his motion to withdraw his plea of guilty. He has, however, filed an application for state post-conviction relief, which is still pending. (Doc. No. 35).

While these events were transpiring in Odom's first case, he remained in custody pursuant to the charges in the second case. Initially, he prevailed at the district court level on a motion to suppress evidence. However, the State filed an immediate appeal and the district court's ruling was reversed by the North Dakota Supreme Court on October 17, 2006. State v. Odom, supra. Upon remand, Odom again moved to suppress the evidence, which motion was denied by the district court. (Brief of Plaintiff-Appellee and Appellant, State v. Odom, No. 20070187, 2007 WL 4610231). Odom then entered a conditional plea of guilty on June 12, 2007, reserving the right to appeal the denial of his latest motion to suppress. (Id.). Odom appealed and the North Dakota Supreme Court summarily affirmed his conviction on January 17, 2008. State v. Odom, 747 N.W.2d 136, 2008 WL 28683 (N.D. 2008) (per curiam).

Odom next filed an application for post-conviction relief in the second case, which appears to have been heard by the state district court at the same time as the application in his first case, and it also is awaiting a decision by the state district court. (Doc. No. 36). Common to both cases is Odom's claim that the complaint and warrant for his arrest in the first case were falsely obtained in

violation of his constitutional rights, that this set in motion the chain of events leading to his being charged in both cases, and that, according to Odom, requires both convictions to be set aside.

### B. Odom's Complaint

In his complaint in this case, Odom alleges the following in pertinent part:

> Det Kenan Kaizer knowingly and willingly provided false information to the states attorney for application of a warrant[.] The application was approved apparently and a unconstitutional warrant was issued for my arrest . . . .
>
> \* \* \*
>
> I'm in no way in possession of any of the items a felony warrant was issued for. There can be no other explanation as to why officer Valley changed from his initial report to a falsified document that states he obtained those items from me.
>
> Racism can be his only motivation and official oppression and police misconduct which has led to my incarceration the stroke and death of my mother my heart problems and diminished mental state and my wife and kids being homeless for the last 14 months[.]
>
> Kenan Kaizer swore out a statement for application for a warrant based on falsified evidence manufactured by himself. Quite a chilling effect on the conscience. The states attorney being fully aware authorized the complaint based on false information and subsequently a warrant was issued. An unconstitutional warrant which loses its weight under law[.] This whole process took a year and a half the defendants surely had plenty of time.
>
> This baseless warrant has lead to an unconstitutional arrest confinement and clear example of racial discrimination and Jim Crow law.
>
> My people are apparently still thought unable to read[.] It appears the Defendants have forgotten Brown v. Board of Education or the Woolworth sit in or any other number of examples that give me the right to check into a hotel and not be made a target simply because of the color of my skin. Det Paul Olson actually placed a gun to my head as a result of this falsified racially motivated warrant which has led to this current prosecutorial misconduct[,] police misconduct[,] and malicious prosecution and overall decline in my health both physicaly (sic) and mentally.
>
> Now the defendant claim ignorance of the law as an excuse when in fact: ignorantia juris neminem excusat Ignorance of the law excuses no one[.]

> For some reason I've been denied my First [A]mendment right of access to the courts[.] Theres (sic) no law library available[.] [T]heres (sic) no way of having a private phone call with your attorney if you must speak in front of 10 or 15 people.
>
> I've asked several times for the use of the law library and have been denied constantly.  I'm not sure who is responsible.

(Doc. No. 9).

Odom names as defendants Bismarck police officers Det. Kenan Kaizer, Det. Paul Olson, and Glen Valley, along with Asst. States Attorney Julie Lawyer - presumably with respect to the allegations of false arrest and malicious prosecution.  With respect to his denial-of-access-to-the-courts claims, he names the Burleigh County Sheriff, stating his actual name was unknown to him. Odom seeks $500,000 as compensation for his pain, suffering, and mental anguish and dismissal of his state criminal charges.   And, while the complaint is not entirely clear, it will be assumed for purposes of this screening that he is suing all of the defendants in both their official and individual capacities.

Since his initial complaint, Odom has filed what he refers to as "supplements," as well as a formal motion to amend his complaint to add additional defendants.  For purposes of screening the complaint, the information in the "supplements" will be considered.  The motion to amend will be addressed separately below.

## II. DISCUSSION

### A. Standards Governing Initial Review

Congress enacted the  Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-203 (2007); Woodford v. Ngo, 548 U.S.81, 84 (2006).  One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer,

or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress chose not to impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 also does not impose any such requirement. Jones v. Bock, 549 U.S. at 212-217. Consequently, to state a cognizable claim, the complaint needs only to meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. __, 127 S.Ct. 2197, 2200 (2007) (per curiam); see id. In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys. Id.

But, this does not mean, however, that the court must accept anything and everything that is filed by a *pro se* prisoner. In enacting the screening requirement, Congress expected it to be more than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous,[3] or malicious.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement

---

[3] "A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)). "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id. And, in terms of whether there is an arguable basis in fact, the court may disregard any factual allegations that are clearly fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

6

to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 n.3 (2007). The complaint must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Twombly, 550 U.S. at 555). Conclusory and formulaic allegations of the elements of a cause of action are not sufficient. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 US at 555-556).[4]

In the case of an action for a violation of federal civil rights under 42 U.S.C. § 1983, this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997). Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping

---

[4] In Ashcroft v. Iqbal, the Supreme Court further elucidated upon the "plausibility" requirement, stating:

As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." . . . . Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." . . . .
 . . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege. . . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
 . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."

129 S.Ct. at 1949-50 (citations omitted).

in mind that persons sued in their individual capacities for damages must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Ashcroft v. Iqbal, 129 S.Ct. at 1948; Gordon v. Hansen, 168 F.3d at 1113.

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law. E.g., Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007); Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[5]

### B. Odom's Causes of Action

As noted above, Odom contends that law enforcement officers engaged in racial profiling and fabricated evidence in order to obtain the warrant for his arrest. He further claims that the state prosecutor was also complicit and that his subsequent prosecution in state district court was motivated by racial animus and based on false evidence. Construed liberally, these allegations may give rise to claims of selective enforcement and malicious prosecution.

---

[5] In Edwards v. Snyder, the Seventh Circuit stated the following:

> Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery. See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir. 2006).

478 F3d at 830.

Odom also attempts to plead denial-of-access-to-the-courts claims premised upon the alleged difficulty in making private calls to his attorney and alleged denial of access to a law library while incarcerated at the Burleigh County Detention Center.

### 1. Selective Enforcement

The enforcement of an otherwise valid law can violate a person's constitutional rights if it is the product of invidious discrimination. See Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000) (quoting Futernick v. Sumpter Township, 78 F.3d 1051, 1056 (6th Cir.1996)). Courts have developed the doctrine of selective enforcement to address this problem. See id. "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect." Id.; see also Whren v. United States, 517 U.S. 806, 813 (1996) (opining that the issue of "selective enforcement of the law based on considerations such as race" is based on "the Equal Protection Clause"); United States v. Frazier, 408 F.3d 1102, 1108 (8th Cir. 2005) (recognizing that encounters with officers may violate the Equal Protection Clause when initiated solely based on racial considerations).

A claim of selective enforcement is usually raised as a defense in the criminal prosecution. See Gardenhire v. Schubert, 205 F.3d at 318. Under certain circumstances, it can be brought in a § 1983 action. Id. at 319 (citing Wayte v. United States, 470 U.S. 598, 607 (1985), and Oyler v. Boles, 368 U.S. 448, 456 (1962)). However, this is not one of those instances.

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court adopted a favorable-termination rule for § 1983 cases that, directly or indirectly, call into question the validity of a state-court conviction, stating:

> This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack, see Parke v. Raley,

> 506 U.S. 20, 29-30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992); Teague v. Lane, 489 U.S. 288, 308, 109 S.Ct. 1060, 1073-1074, 103 L.Ed.2d 334 (1989); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Voorhees v. Jackson, 10 Pet. 449, 472-473, 9 L.Ed. 490 (1836). We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.
> 
> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 485-487 (footnotes omitted). In the Eighth Circuit, the favorable-termination rule applies even though the defendant is no longer incarcerated as a result of the conviction premised upon the allegedly unconstitutional conduct and the defendant's state remedies have been exhausted. Abdullah v. Minnesota, 261 Fed.Appx. 926, 927 (8th Cir. 2008) (unpublished per curiam); Entzi v. Redmann , 485 F.3d 998, 1003 (8th Cir. 2007).

Here, Odom seeks in his prayer for relief to set aside one or both of his state-court convictions premised, in part, upon his claim of selective enforcement. Moreover, even if Odom was only seeking damages, an award premised upon selective prosecution would necessarily imply the invalidity of his conviction. Gibson v. Superintendent of New Jersey Department of Law and Public Safety-Division of State Police, 411 F.3d 427, 440-441 (3rd Cir. 2005). Consequently, since

10

there has been no favorable termination of the underlying state-court conviction, Odom's claim of selective enforcement is Heck barred and should be dismissed without prejudice for this reason.

### 2. Malicious Prosecution

In addition to the claim of selective enforcement, Odom appears also to be asserting a claim of malicious prosecution. As is evident from the foregoing discussion, however, any such claim is also Heck barred. Further, to the extent that a claim for malicious prosecution can be the subject of a § 1983 action,[6] favorable termination is an essential element of the claim. See Heck v. Humphrey, 512 U.S. at 484; Kummer v. City of Fargo, 516 N.W.2d 294, 298 (N.D. 1994).[7]

### 3. Denial of Access-to-the-Courts

Odom alleges in his complaint that he was denied access to legal material while at the Burleigh County Detention Center. Any obligation on the part of jail officials to provide access to legal material, however, arises out of a prisoner's rights to have meaningful access to the courts. E.g., Lewis v. Casey, 518 U.S. 343 (1996). And, the Supreme Court has held that a prisoner must demonstrate an actual injury, normally by showing that a "nonfrivolous legal claim had been frustrated or was being impeded," in order to make out a cognizable claim of a constitutional violation. Id. at 352-353; Hartsfield v. Nichols, 511 F.3d 826, 831-832 (8th Cir.2008). The mere denial of access, even if systemic, is not enough. Sabers. v. Delano, 100 F.3d 82, 83 (1996) (per curiam); see id.

---

[6] Kurtz v. City of Schrewsberry, 245 F.3d 753, 758 (8th Cir. 2001) (stating that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury); Sander v. Sears, Roebuck, and Co., 984 F.2d 972, 977 (8th Cir. 1993) ("[M]alicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law.").

[7] Odom does not have a separate claim for "false arrest" since his arrest was pursuant to a complaint and arrest warrant, which makes the claim one of malicious prosecution, to the extent there is a claim. See, e.g., Wallace v. Kato, 549 U.S. 388-390 (2007) (citing other authority). Further, even if there was a claim of false arrest, it would be limited to what occurred prior to Odom seeing a judicial officer and being entitled to a determination of probable cause.

In this case, Odom's complaint is devoid of any claim of prejudice resulting from the alleged denial of access to the legal material, much less facts that would support an argument of prejudice. For this reason alone, he has failed to state a denial-of-access claim cognizable under § 1983. Ligons v. Crist, 82 Fed.Appx. 504, 505 (8th Cir. 2003) (holding that a complaint alleging denial of access to legal material was properly dismissed because the prisoner "did not allege an actual injury with respect to any particular legal claim.").[8]

Odom also complains about an alleged difficulty in talking privately with his attorney by phone, stating "theres (sic) no way of having a private phone call with your attorney if you must speak in front of 10 or 15 people." However, he again has failed to claim prejudice, much less plead

---

[8] While one of the ways that prison officials can accommodate the right of meaningful access to the courts is by providing legal material, it is not the only way. Or, to put it somewhat differently, there is no "abstract, freestanding right to a law library." Lewis v. Casey Id. at 351-353; see Finch v. Miller, 491 F.3d 424, 427 (8th Cir. 2007).

The material supplementing Odom's complaint includes a written denial by jail officials of one of his requests for access to legal material. (Doc. No. 9-3). The denial stated it was the policy of the Burleigh County Detention Center not to provide legal material to prisoners who are represented by retained or court-appointed counsel. Also, the denial suggested it was the policy of the Burleigh County Detention Center not to provide access under any circumstances for "civil cases." Notably, the response did not define what was meant by "civil cases," nor did it discuss whether the Burleigh County Detention Center provides other means of access for petitions for post conviction relief and habeas corpus and civil actions challenging the conditions of confinement.

Odom does not state why he wanted the legal material he claims he was denied. But, if it was for his ongoing criminal case, it is clear there was no constitutional violation, even putting aside the issue of prejudice. This is because he was appointed counsel and appointment of counsel provides sufficient access to the courts - at least for the matters for which counsel is appointed. United States v. Taylor,183 F.3d 1199, 1204 (10th Cir. 1999); Benjamin v. Kerik, 102 F. Supp. 2d 157, 163-164 (S.D.N.Y. 2000); see Lewis v. Casey, 518 U.S. at 352; cf. United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000).

The right of a prisoner to access to the courts is not limited to criminal cases, however. At the very least, it extends also to applications for postconviction and habeas relief as well as civil actions challenging the conditions of confinement. See, e.g., Lewis v. Casey, 518 U.S. at 354-355; Cody v. Weber, 256 F.3d 764, 767-768 (8th Cir. 2001); see generally M. Mushlin, 2 Rights of Prisoners § 11.3 (3d ed). Consequently, if Odom's desire for legal material was for one of these purposes, the determination of whether there was a denial of meaningful access to the courts would be dependent upon a number of factors, including issuances of time and the existence of adequate alternatives. But, the fact that Odom had court-appointed counsel for his criminal case would not be sufficient for some other purpose in which he was or would be proceeding *pro se*. See Hooten v. Jenne, 786 F.2d 692, 695-696 (5th Cir. 1986).

12

facts that would support an argument for prejudice. Consequently, with respect to this allegation, he also has failed to state a cognizable claim of denial of access to the courts.[9]

### C.  Motion to Amend

In addition to certain "supplements," Odom has also filed a motion to amend in which he seeks to add five more defendants: the Burleigh County Clerk of Court, the Burleigh County State's Attorney, and three of his former appointed counsel. No new claims are asserted against the first two and any § 1983 claims against the latter three fail because court-appointed counsel are not considered "state actors." E.g., Polk County v. Dodson, 454 U.S. 312, 325 (1981); Vera v. Board of Judges of Judicial Dist. of Nueces County, 260 Fed.Appx. 664, 666, 2007 WL 4510902 (5th Cir. 2007) (unpublished per curiam); Grant v. Paul, 255 Fed.Appx. 693, 2007 WL 4268954 (3d Cir. 2007) (unpublished per curiam); see Finch v. Miller, 491 F.3d 424, 427 (8th Cir. 2007) Consequently, the proposed amendment likewise does not state a cognizable claim under § 1983.

## III.  RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that **MOTION TO AMEND** (Doc. No. 32) be **DENIED**, and that the **COMPLAINT** (Doc. No. 9) be **DISMISSED WITHOUT PREJUDICE**.

---

[9] While it appears his complaint pleads only a denial of access claim, it is also noteworthy that Odom does not claim he was totally prohibited from conferring in private with his attorney, including personal visits and by mail.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fifteen (15) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 5th day of August, 2008.

> /s/ Charles S. Miller, Jr.
> Charles S. Miller, Jr.
> United States Magistrate Judge